[S. F. No. 14982. In Bank.—April 16, 1935.]

MILLICENT L. SEARS ETTLINGER, Appellant, v. ISSAC LIONEL ETTLINGER, Respondent.

John H. Crabbe and Nat Schmulowitz for Appellant.

Joseph E. Bien and Werner Olds for Respondent.

WASTE, C. J.—In February, 1928, the plaintiff commenced an action against the defendant for separate maintenance. Defendant's assets at the time were valued at approximately $265,000. On March 20, 1929, during the pendency of the action, the parties entered into a written agreement looking to the adjustment and settlement of their property rights. No question of fraud in the procurement or execution of this agreement is raised. Its provisions will be referred to hereinafter. Subsequently, and, as plaintiff contends, in consideration of the execution of this agreement, she agreed to, and did, change the form of her action from one for separate maintenance to one for absolute divorce upon the ground of desertion. Pursuant to the allegations of plaintiff's amended complaint, an interlocutory decree of divorce was entered in her favor March 28, 1929. This decree among other things provided:

"It is further ordered, adjudged and decreed that that certain agreement for the settlement of the property rights of the parties hereto, a copy of which is attached hereto and marked 'Exhibit A' and by such reference made a part hereof with the same force and effect as if set out at length

within the body of this decree be, and the same is, hereby ratified, approved and confirmed.

"And it is further ordered, adjudged and decreed *that in pursuance of the aforementioned agreement* the plaintiff do have and recover from the defendant the sum of Two hundred fifty ($250.00) dollars per month commencing with the month of April, 1929, and payable on the first day of each and every month until the death or remarriage of the plaintiff.

"And it is further ordered, adjudged and decreed that neither the making ·of this decree nor anything herein contained shall in any manner modify, restrict, affect or prejudice the provisions or any of them, of said agreement hereinabove mentioned, a copy of which is hereto attached, and hereinabove approved, which agreement and all of its provisions shall remain in full force and effect."

As stated in the body of the decree, a copy of the agreement was attached thereto. This decree was permitted to become final without any attack having been made thereon by way of appeal or otherwise. The final decree of divorce was entered one year thereafter, and it likewise has become final without any assault having been made thereon. So far as material here, it provides:

"And it is hereby further ordered, adjudged and decreed that that certain agreement for the settlement of property rights of the parties hereto, a copy of which was and is attached to the interlocutory decree of divorce and marked Exhibit 'A' and by such reference made a part thereof with the same force and effect as if set out at length within the body of said interlocutory judgment or decree, be and the same is hereby ratified, approved and confirmed;

"And it is hereby further ordered, adjudged and decreed, that *in pursuance of the aforementioned agreement* plaintiff do have and recover from the defendant the sum of two hundred fifty dollars ($250.00) per month commencing with the month of April, 1930, and payable on the first day of each and every month until the death or remarriage of the plaintiff;

"And it is further ordered, adjudged and decreed, that neither the making of this decree nor anything herein contained shall in any manner modify, restrict, affect or preju-

dice the provisions, or any of them, of said agreement here-inabove mentioned, which agreement and all of its provisions shall remain in full force and effect."

For approximately two and one-half years the defendant accepted and complied with the terms of the final decree. However, on March 7, 1933, the court below, over plaintiff's objection, granted defendant's request for a reduction of the monthly installments payable under the final decree by reducing the same from $250 to $175 a month for the period of one year. This modification was asked for, and granted, on an asserted change in defendant's financial status.

Plaintiff opposed the same on the ground that the court, having theretofore approved, confirmed and adopted the property settlement agreement entered into between the parties, and having incorporated the same in the interlocutory decree and having awarded plaintiff the sum of $250 a month "in pursuance of the aforementioned agreement", was without jurisdiction to modify the decree based on such agreement. She urges that the provision in the agreement for the monthly payment of $250, though stated to be for her "support and maintenance", must reasonably be held to be in lieu of property rights. Defendant, on the other hand, urges that said provision constitutes but an agreement for the payment by defendant to plaintiff in monthly installments of permanent support and alimony which the court below, under the express provisions of section 139 of the Civil Code, may modify from time to time upon proper showing.

We cannot accept the defendant's theory. In its preliminary provisions the agreement recognizes that the parties were then living separate and apart and that an action was then pending for plaintiff's separate maintenance. It goes on to declare it to be "the desire of both parties hereto that all of the property rights of the parties hereto respectively shall be finally adjusted, settled, and determined" and that the parties "have agreed to adjust, liquidate and settle between themselves all rights and claims of each as against the separate property of the other, there being no community property". Provision is then made that the agreement shall not in any manner interfere with the right of either party to thereafter institute or defend an action for divorce

"save and except as to the property rights of the parties hereto and the maintenance and support of the [plaintiff] and the amount of the costs, expenses and attorneys fees and in those respects both of the parties hereto agree and stipulate as hereinafter set forth''. Defendant thereupon undertakes to pay plaintiff $1500, to discharge certain debts incurred by plaintiff, to transfer and convey certain real and personal property to plaintiff, and ''further agrees to pay to the [plaintiff] for . . . support and maintenance . . . the sum of two hundred and fifty dollars ($250.00) per month . . . until the death or remarriage of the party of the first part in the event of a divorce between the parties hereto'', which payments are expressly made a charge upon the estate of defendant in the event he predeceases plaintiff. Under the ninth clause of the agreement the plaintiff agrees and acknowledges ''that the property hereinbefore described and referred to and the *monies* to be paid . . . and the said monthly payments as aforesaid so to be paid to her . . . is and are in full satisfaction and settlement of all claims and rights to property of every kind and nature which she might now or hereafter make or have or could otherwise now or hereafter make or have against the second party or his estate whether at law or in equity or probate and also in full settlement of all claims to community property which she might now or hereafter make or have or could otherwise now or hereafter make or have against the second party or his property and also as full provision for her support and maintenance and in full settlement of all claims which she might now or hereafter make or have or could otherwise now or hereafter make or have against the second party for alimony, award, expense money, costs or counsel fees, in any action for divorce or separate maintenance, or any other litigation which may hereafter arise between the parties hereto and the said first party hereby accepts the said property and money as aforesaid in full and final settlement of all present or future possible claims which said first party might now or hereafter make or have or could now or hereafter make or have or otherwise assert against the party of the second part or against the property of the second party whether real, personal or mixed, and wheresoever the same may be or held, of whatsoever kind or nature, or

whether at law or in equity or in probate, save and except as herein provided, and all rights and claims of the party of the first part against the party of the second part and against his property are hereby waived, settled, liquidated, relinquished, abandoned, surrendered and released and no claim, right, demand or monetary benefit, homestead, probate homestead, homestead right, family allowance or any other property benefit or interest of any kind or character shall ever be claimed, asserted or sought by her, the said party of the first part, against the party of the second part or in or to his property except as in this contract provided''. Except as to the ''claims, demands and rights'' created in the agreement, the plaintiff, under the fourteenth clause thereof, waived and surrendered all claims, past, present and future, to any property then owned or thereafter acquired by defendant, including the right to claim such property, or any part of it, to be community property. By the seventeenth clause plaintiff ''agrees that she will not either in pending litigation or in any other litigation which may be hereafter instituted claim and she hereby waives and agrees to waive alimony to which she may be otherwise entitled whether temporarily or permanently save and except such claims as are herein created''.

It is then ''covenanted and agreed by and between the parties hereto that the execution of this agreement shall be and is intended to be a full, complete and final adjustment of all property rights of the parties hereto and that neither party hereto shall or will at any time hereafter make or attempt to make any other or further claims for himself or herself individually''.

The agreement concludes by reserving to the plaintiff the right to enforce against the defendant, his heirs and assigns, ''all claims herein created or based upon the provisions . . . of this agreement . . . ''

■ We are satisfied from an examination of the entire agreement, having particular reference to the above-quoted provisions thereof, that it was the intention of the parties to definitely, fully and permanently adjust and settle all of their property rights. The agreement indicates that the monthly payments to be made thereunder by defendant to plaintiff, stated to be for the latter's ''support and mainte-

nance", constituted an integral and important element in the amicable adjustment and liquidation of such property rights. In our opinion, the contract suggests that such payments were to be made to and received by plaintiff as part of the property settlement and in lieu of property rights. This would appear to have been recognized in both the interlocutory and final decrees of divorce for each provides that "neither the making of this decree nor anything herein contained shall in any manner modify, restrict, affect or prejudice the provisions or any of them, of said agreement hereinabove mentioned . . . which agreement and all of its provisions shall remain in full force and effect". Each decree thereupon directs the payment by defendant to plaintiff of $250 a month "in pursuance of the aforementioned agreement".

That the parties may contract with regard to their properties and their respective interests therein is now settled. Though not binding in the first instance on the court in which the divorce action is pending, such contract may be approved and confirmed by the court, and if appropriately referred to and adopted in its decree, as here, such decree, as to the matters covered by the agreement, becomes immune from subsequent modification. In *Armstrong* v. *Armstrong*, 132 Cal. App. 609, 611 [23 Pac. (2d) 50], it is stated: "The power of the court to modify decrees of this character is statutory . . . and cannot be controlled by the parties . . . ; if, by the terms of the property agreement, the rights of the parties are contractual, that is a matter which can be determined only in an action based upon the contract . . . ; as it does not appear from the face of either decree that the property settlement was adopted by the trial court, the statutory power of the court to modify cannot be denied . . . "

The instant case, as distinguished from the one just cited, presents an express confirmation and adoption by the court of the property settlement agreement. The court was therefore without jurisdiction to thereafter modify its provisions.

In *Wallace* v. *Wallace*, 136 Cal. App. 488 [29 Pac. (2d) 314], the parties to the divorce action had theretofore entered into a written property settlement agreement which, among other things, provided, as here, for the making of certain monthly payments by the offending husband to the

plaintiff wife, the agreement concluding, as here, that the benefits thereof were accepted in complete satisfaction of all rights to support, maintenance or alimony. This agreement was offered in evidence upon the trial of the divorce action but was not referred to in either the interlocutory or final decree, though provision was made in each for monthly payments to the wife in amounts identical with those specified in the agreement. Subsequent to the entry of the final decree the husband moved for a modification of the monthly payments designated in the decree. In denying such relief the court found that the monthly payments were not in the nature of alimony but represented sums due the wife under the property settlement agreement received in evidence upon the trial of the divorce action. In affirming the order it was declared:

"Let us determine first the nature of the monthly payments, for if they are found to be a part of a property settlement entered into between the parties prior to the divorce it would be a complete answer to the present controversy.

"That a husband and wife may alter their legal relations as to property is well established (sec. 159, Civ. Code), and apparently with that in view the parties hereto attempted to mutually adjust their respective claims to certain property. Regardless of any allegation in the complaint using the word 'alimony', a reference to the property settlement agreement discloses they were attempting to effect a complete adjustment of their property and the benefits thereof were to be accepted in full satisfaction of support, maintenance or alimony. With that clause in the agreement it hardly seems probable that the allowance in the decree would have been by way of alimony, but rather as part of a property adjustment. This is further emphasized by the fact that the prayer of the complaint does not ask for alimony but merely that the property settlement agreement be approved, and by the further fact that the order of the court did not in form designate it as alimony and followed the agreement as to amounts and time of payment."

In *Atlass* v. *Atlass,* 112 Cal. App. 514, 517 [297 Pac. 53], it is declared that "Had the court [upon application for modification] found the *provisions for support* [in the interlocutory and final decrees] to have been in fact by way of

property settlement then the said provisions could not have been disturbed. . . . ''

In the course of the decision in *Cohen* v. *Cohen*, 150 Cal. 99 [88 Pac. 267, 11 Ann. Cas. 520], it is stated that ''Where a wife has obtained an absolute divorce carrying with it the privilege of a remarriage, and permanent alimony is decreed to her, it is generally held that the husband, upon her subsequent remarriage, may secure an order vacating the decree as to alimony. . . . There is a qualification of this rule, generally adverted to in the cases cited, to the effect that such a remarriage does not authorize a vacation of the decree for alimony where it is given as a substitute for, or in lieu of, the wife's rights, at the time of the decree, in the property of the husband, or in the community property, or in property which he acquired from her by the marriage.'' This language is quoted with approval in *Hogarty* v. *Hogarty*, 188 Cal. 625, 627 [206 Pac. 79].

The conclusion we have reached makes it unnecessary for us to consider the point that a sufficient showing had not been made of changed circumstances warranting a modification, even if the power to modify, under the circumstances here presented, be conceded.

The order appealed from is reversed.

Preston, J., Curtis, J., Seawell, J., Shenk, J., and Langdon, J. concurred.

Rehearing denied.